**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SUNSHINE EASTGATE PLAZA, LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-02990-O |
| | § | |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| AXIS SURPLUS INSURANCE COMPANY, | § | |
| AND STARSTONE SPECIALTY | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANT AXIS SURPLUS INSURANCE COMPANY'S**
**<u>ANSWER TO PLAINTIFF'S AMENDED COMPLAINT</u>**

Defendant AXIS Surplus Insurance Company ("Defendant") files this Answer to the

Plaintiff Sunshine Eastgate Plaza, LLC's ("Plaintiff") First Amended Complaint (Doc. 26) ("First

Amended Complaint"), and in support, respectfully, shows the Court as follows:

**I.       ADMISSIONS & DENIALS**

<u>PARTIES</u>

1.       Defendant admits that Plaintiff is a Texas limited liability company. Defendant

further admits that it does not have any information questioning Plaintiff's ownership at the

property at issue, and for the purposes of determining jurisdiction, the parties are diverse and

jurisdiction in the United States District Court for the Northern District of Texas is proper.

2.       Defendant admits the allegations contained in Paragraph 2 of Plaintiff's Amended

Complaint.

3.       Defendant admits the allegations contained in Paragraph 3 of Plaintiff's Amended

Complaint.

4.      Defendant admits the allegations contained in Paragraph 4 of Plaintiff's Amended Complaint.

JURISDICTION & VENUE

5.      Defendant admits this Court has subject matter jurisdiction over the instant lawsuit.

6.      Defendant admits that venue is proper in the United States District Court for the Northern District of Texas. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 6 of Plaintiff's Amended Complaint.

7.      Defendant admits this Court has jurisdiction over the instant lawsuit. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 7 of Plaintiff's Amended Complaint.

BASIC PREMISE

8.      Defendant admits that Plaintiff is a named insured under a co-insuring commercial property policy issued by Lexington Insurance Company, Policy No. 062502712 (50% participation), AXIS Surplus Insurance Company, Policy No. EAF657478-23 (25% participation), and StarStone Specialty Insurance Company, Policy No. U87778230CSP (25% participation) (collectively, the "Policy"), for direct physical loss or damage to insured property subject to all conditions, definitions, and exclusions, limitations, and every other term/provision contained therein. Except as expressly admitted herein, Defendant denies the remaining allegations contained in paragraph 8 of Plaintiff's Amended Complaint.

FACTUAL BACKGROUND

9.      Defendant admits that Plaintiff reported a loss for alleged property damage on September 24, 2024 to commercial buildings located at 4445 Saturn Road and 1430 Northwest

2

Highway, Garland, Texas 75041 (the "Property"). Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 9 of Plaintiff's Amended Complaint.

10.    Defendant admits that the Property was insured under the co-insuring property policy issued by Lexington Insurance Company, Policy No. 062502712 (50% participation), AXIS Surplus Insurance Company, Policy No. EAF657478-23 (25% participation), and StarStone Specialty Insurance Company, Policy No. U87778230CSP (25% participation). Defendant further admits that the Texas Insurance Code applies to claims handling activities in Texas. Defendant denies the allegations contained in Paragraph 10 of Plaintiff's Amended Complaint to the extent Plaintiff seeks to impose the applicability of the Texas Insurance Code beyond its scope as applied to surplus lines insurers.

11.    Defendant admits Plaintiff reported the claim. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 11 of Plaintiff's Amended Complaint.

12.    Defendant admits that Lexington, AXIS, and StarStone engaged Ryan Vesta of Crawford Global Technical Services ("Crawford") to assist with the claim investigation. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 12 of Plaintiff's Amended Complaint.

13.    Defendant admits that Crawford inspected the Property on or about November 21, 2024. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 13 of Plaintiff's Amended Complaint.

14.    Defendant admits that Crawford, on behalf of Lexington, AXIS, and StarStone, engaged J.S. Held, LLC, to assist with the claim investigation. Defendant further admits that J.S. Held, LLC inspected the Property on or about January 8, 2025. Except as expressly admitted

3

herein, Defendant denies the remaining allegations contained in Paragraph 14 of Plaintiff's Amended Complaint.

15. Defendant admits that J.S. Held prepared its Engineering Evaluation Report, dated January 24, 2025. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 15 of Plaintiff's Amended Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of Plaintiff's Amended Complaint.

17. Defendant denies the allegations contained in Paragraph 17 of Plaintiff's Amended Complaint.

18. Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Amended Complaint.

19. Defendant denies the allegations contained in Paragraph 19 of Plaintiff's Amended Complaint.

20. Defendant admits that Crawford, on behalf of Lexington, AXIS, and StarStone, issued a claim decision letter which explained the basis for their claim decision. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 20 of Plaintiff's Amended Complaint.

21. Defendant denies the allegations contained in Paragraph 21 of Plaintiff's Amended Complaint.

22. Defendant denies the allegations contained in Paragraph 22 of Plaintiff's Amended Complaint.

23. Defendant denies the allegations contained in Paragraph 23 of Plaintiff's Amended Complaint.

24. Defendant denies the allegations contained in Paragraph 24 of Plaintiff's Amended Complaint.

25. Defendant denies the allegations contained in Paragraph 25 of Plaintiff's Amended Complaint.

26. Defendant denies the allegations contained in Paragraph 26 of Plaintiff's Amended Complaint.

27. Defendant denies the allegations contained in Paragraph 27 of Plaintiff's Amended Complaint.

28. Defendant denies the allegations contained in Paragraph 28 of Plaintiff's Amended Complaint.

29. Defendant denies the allegations contained in Paragraph 29 of Plaintiff's Amended Complaint.

30. Defendant denies the allegations contained in Paragraph 30 of Plaintiff's Amended Complaint.

31. Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Amended Complaint.

32. Defendant denies the allegations contained in Paragraph 32 of Plaintiff's Amended Complaint.

33. Defendant denies the allegations contained in Paragraph 33 of Plaintiff's Amended Complaint.

34. Defendant denies the allegations contained in Paragraph 34 of Plaintiff's Amended Complaint.

35. Defendant denies the allegations contained in Paragraph 35 of Plaintiff's Amended

Complaint.

36.     Defendant denies the allegations contained in Paragraph 36 of Plaintiff's Amended Complaint.

37.     Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Amended Complaint.

38.     Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Amended Complaint.

<u>COUNT I – BREACH OF CONTRACT</u>

39.     Paragraph 39 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead simply incorporates by reference all previous paragraphs of Plaintiff's Amended Complaint. As such, no response from Defendant is necessary. To the extent a response from Defendant is required, Defendant incorporates by reference each of its responses to all previous paragraphs of the Amended Complaint.

40.     Paragraph 40 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead sets forth a legal conclusion and, as a result, does not require a response from Defendant. To the extent a response from Defendant is required, Defendant denies the allegations contained in Paragraph 40 of Plaintiff's Amended Complaint.

41.     Defendant admits that 4445 Saturn Road, Garland, Texas 75041 is an insured location under the Policy.

42.     Defendant admits that the Policy provides property coverage for direct physical loss or damage subject to all conditions, definitions, and exclusions, limitations, and every other term/provision contained therein. Except as expressly admitted herein, Defendant denies the remaining allegations contained in paragraph 42 of Plaintiff's Amended Complaint.

43.    Defendant denies the allegations contained in Paragraph 43 of Plaintiff's Amended Complaint.

44.    Defendant denies the allegations contained in Paragraph 44 of Plaintiff's Amended Complaint.

45.    Defendant denies the allegations contained in Paragraph 45 of Plaintiff's Amended Complaint.

46.    Defendant admits that Plaintiff reported a loss for alleged property damage. Except as expressly admitted herein, Defendant denies the remaining allegations contained in Paragraph 46 of Plaintiff's Amended Complaint.

47.    Defendant denies the allegations contained in Paragraph 47 of Plaintiff's Amended Complaint. To the extent the allegations of Paragraph 47 set forth a legal conclusion, Defendant need not and does not respond.

48.    Defendant denies the allegations contained in Paragraph 48 of Plaintiff's Amended Complaint.

49.    Defendant denies the allegations contained in Paragraph 49 of Plaintiff's Amended Complaint.

50.    Defendant denies the allegations contained in Paragraph 50 of Plaintiff's Amended Complaint.

51.    Defendant denies the allegations contained in Paragraph 51 of Plaintiff's Amended Complaint.

52.    Defendant denies the allegations contained in Paragraph 52 of Plaintiff's Amended Complaint.

53.    Defendant denies the allegations contained in Paragraph 53 of Plaintiff's Amended

Complaint.

54.     Defendant denies the allegations contained in Paragraph 54 of Plaintiff's Amended Complaint, including the subsequent unnumbered prayer paragraph.

COUNT II – VIOLATIONS OF TEXAS INSURANCE CHAPTER 541
(UNFAIR CLAIM SETTLEMENT PRACTICES)

55.     Paragraph 55 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead simply incorporates by reference all previous paragraphs of Plaintiff's Amended Complaint. As such, no response from Defendant is necessary. To the extent a response from Defendant is required, Defendant incorporates by reference each of its responses to all previous paragraphs of the Amended Complaint.

56.     Paragraph 56 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead sets forth a legal conclusion and, as a result, does not require a response from Defendant. To the extent a response from Defendant is required, Defendant denies the allegations contained in Paragraph 56 of Plaintiff's Amended Complaint.

57.     Defendant admits that the Texas Insurance Code applies to claims handling activities in Texas. Defendant denies the allegations contained in Paragraph 57 of Plaintiff's Amended Complaint to the extent Plaintiff seeks to impose the applicability of the Texas Insurance Code beyond its scope as applied to surplus lines insurers.

58.     Defendant denies the allegations contained in Paragraph 58 of Plaintiff's Amended Complaint. To the extent a response from Defendant is required, Defendant denies the allegations contained in Paragraph 58 of Plaintiff's Amended Complaint.

59.     Defendant denies the allegations contained in Paragraph 59 of Plaintiff's Amended Complaint, including subparts (a) through (c).

60.     Defendant denies the allegations contained in Paragraph 60 of Plaintiff's Amended

Complaint.

61.     Defendant denies the allegations contained in Paragraph 61 of Plaintiff's Amended Complaint.

62.     Defendant denies the allegations contained in Paragraph 62 of Plaintiff's Amended Complaint.

63.     Defendant denies the allegations contained in Paragraph 63 of Plaintiff's Amended Complaint.

64.     Defendant denies the allegations contained in Paragraph 64 of Plaintiff's Amended Complaint, including the subsequent unnumbered prayer paragraph.

<u>COUNT III – VIOLATIONS OF TEXAS INSURANCE CHAPTER 542</u>
<u>(PROMPT PAYMENT OF CLAIMS ACT)</u>

65.     Paragraph 65 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead simply incorporates by reference all previous paragraphs of Plaintiff's Amended Complaint. As such, no response from Defendant is necessary. To the extent a response from Defendant is required, Defendant incorporates by reference each of its responses to all previous paragraphs of the Amended Complaint.

66.     Paragraph 66 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead sets forth a legal conclusion and, as a result, does not require a response from Defendant. To the extent a response from Defendant is required, Defendant denies the allegations contained in Paragraph 66 of Plaintiff's Amended Complaint.

67.     Defendant admits that the Texas Insurance Code applies to claims handling activities in Texas. Defendant denies the allegations contained in Paragraph 67 of Plaintiff's Amended Complaint to the extent Plaintiff seeks to impose the applicability of the Texas Insurance Code beyond its scope as applied to surplus lines insurers.

68.     Defendant denies the allegations contained in Paragraph 68 of Plaintiff's Amended Complaint. To the extent the allegations of Paragraph 68 set forth a legal conclusion, Defendant need not and does not respond.

69.     Defendant denies the allegations contained in Paragraph 69 of Plaintiff's Amended Complaint, including subparts (a) and (b).

70.     Defendant denies the allegations contained in Paragraph 70 of Plaintiff's Amended Complaint.

71.     Defendant denies the allegations contained in Paragraph 71 of Plaintiff's Amended Complaint.

72.     Defendant denies the allegations contained in Paragraph 72 of Plaintiff's Amended Complaint, including the subsequent unnumbered prayer paragraph.

<u>COUNT IV – DECLARATORY JUDGMENT</u>

73.     Paragraph 73 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead simply incorporates by reference all previous paragraphs of Plaintiff's Amended Complaint. As such, no response from Defendant is necessary. To the extent a response from Defendant is required, Defendant incorporates by reference each of its responses to all previous paragraphs of the Amended Complaint.

74.     Paragraph 74 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and instead sets forth a legal conclusion and, as a result, does not require a response from Defendant. To the extent a response from Defendant is required, Defendant denies the allegations contained in Paragraph 74 of Plaintiff's Amended Complaint.

75.     Paragraph 75 of Plaintiff's Amended Complaint does not contain any factual allegations directed at Defendant and as a result does not require a response from Defendant. To

the extent a response from Defendant is required, Defendant denies the damages sought by Plaintiff are covered under the Policy as alleged by Plaintiff.

76. Defendant denies the allegations contained in Paragraph 76 of Plaintiff's Amended Complaint.

77. Paragraph 77 of Plaintiff's Amended Complaint, including subparts (a) through (c), does not contain any factual allegations directed at Defendant and as a result does not require a response from Defendant. To the extent a response from Defendant is required, Defendant (a) denies that the alleged damages were the resulted of a covered weather event during the policy period; (b) denies that Defendant is obligated to pay Plaintiff any monies for covered damages under the Policy; and (c) denied that Defendant breached any contract or that Defendant violated any other statute or law, denies liability to Plaintiff under any theory, and denies liability to Plaintiff for damages or other relief.

78. Defendant denies the allegations contained in Paragraph 78 of Plaintiff's Amended Complaint, including the subsequent unnumbered prayer paragraph.

KNOWLEDGE AND INTENT

79. Defendant denies the allegations contained in Paragraph 79 of Plaintiff's Amended Complaint.

DEMAND FOR JURY TRIAL

80. Paragraph 80 of Plaintiff's Amended Complaint demands a jury trial. Paragraph 80 does not contain any allegations for which a response is required.

PRAYER FOR RELIEF

81. Defendant denies Plaintiff is entitled to any relief alleged in its Prayer Paragraph, including subparts 1 through 5.

82.     Defendant denies any and all allegations contained in any unnumbered or misnumbered paragraphs, preambles, and/or prayers for relief. Defendant further denies that Plaintiff is entitled to any relief from Defendant.

## II.     AFFIRMATIVE DEFENSES

Without waving the foregoing, and for further answer, if any be necessary, Defendant asserts the following conjunctive and/or alternative specific denials, defenses, alternative defenses, and affirmative defenses:

83.     Defendant denies that it breached the Policy.

84.     Defendant denies that it violated the Texas Insurance Code.

85.     Defendant denies that it violated any other statute or law, denies liability to Plaintiff under any theory, and denies liability to Plaintiff for damages or other relief.

86.     Defendant denies the allegations of agency and respondeat superior as alleged by Plaintiff.

87.     Defendant denies that Plaintiff has provided proper pre-suit notice under the Policy, and under any applicable statute, including but not limited to Texas Insurance Code Chapters 541 and 542. Specifically, Defendant was entitled to pre-suit notice under Chapter 542A of the Texas Insurance Code at least 61 days prior to filing this suit. Plaintiff did not send written notice to Defendant as required. Because Plaintiff failed to provide Defendant with the statutory notice required under Section 542.003, Plaintiff is precluded from recovering attorney's fees pursuant to Section 542A.007(d).

88.     To the extent Plaintiff seeks damages for items or conditions that Plaintiff did not provide notice of as part of the underlying insurance claim, then Plaintiff failed to comply with the Insured's duties under the Policy and Texas law, including providing proper notice of claim.

12

89.     Plaintiff's claims are also barred because Plaintiff fails to state a claim upon which relief can be granted with regard to Plaintiff's claims. Specifically, Plaintiff failed to describe particular facts or circumstances that transform alleged contractual claims into a cause of action for alleged violations of the Texas Insurance Code. Plaintiff failed to allege any specific conduct on the part of Defendant which would subject Defendant to liability under Chapters 541 and 542 of the Texas Insurance Code. Further, Defendant specifically states Defendant did not, knowingly or otherwise, make any false, fraudulent, or negligent misrepresentations to Plaintiff.

90.     Plaintiff is not entitled to consequential damages in general and because it failed to meet the particularized pleading standard under Federal Rule of Civil Procedure 9(g).

91.     Plaintiff's damages, if any, are the result of acts or omissions, fault, negligence, intentional conduct, breach of contract, violation of statute, or breach of duty, by or of persons, entities, or parties over whom Defendant had no control and for whom Defendant has no legal responsibility.  Such acts or omissions were the sole cause, sole proximate cause, producing cause, or a new and independent intervening or superseding cause of the alleged injuries to Plaintiff.

92.     Plaintiff's damages, if any, are the result, in whole or in part, of Plaintiff's own fault, acts or omissions, negligence, intentional conduct, breach of duty, violation of statute, or breach of contract, or that of its agents or representatives or employees.

93.     Defendant is entitled to submit issues of proportionate fault or proportionate causation in accordance with the Texas Civil Practice & Remedies Code for the percentage of responsibility assigned to each by the trier of fact.

94.     If Plaintiff has suffered any uncompensated damages or loss, which is denied, Plaintiff failed to mitigate such damages.

95.     Plaintiff's claims are barred and/or limited to the extent that the alleged loss and

damage for which Plaintiff seeks coverage were not fortuitous, were already in progress, or were or should have been known to Plaintiff before the time Plaintiff obtained the Policy and/or contracted with Defendant.

96.     Plaintiff's claims and the damages it seeks are barred under the Policy for any loss or damage that did not occur during the policy period.

97.     Plaintiff's claims and the damages it seeks are barred and/or limited because the sums for which Plaintiff seeks coverage under the Policy were not incurred as a direct result of physical loss or damage to covered property, as required by the Policy.

98.     Plaintiff's claims and the damages it seeks are barred and/or limited because the sums for which Plaintiff seeks coverage under the Policy are not reasonable and necessary costs.

99.     Plaintiff's claims are barred or limited by the terms, conditions, definitions, exclusions, limitations, and other provisions in the policy at issue, Policy No. EAF657478-23  (the "**AXIS Policy**"), attached hereto as **Exhibit A**, and any other policy issued to Plaintiff by Defendant, and Defendant, therefore, incorporates herein by reference the entirety of the Policy, and to the extent necessary, asserts affirmatively every term, condition, definition, exclusion, limitation, and every other provision, including, but not limited to the limit of insurance, deductible, and policy period, and also including, but not limited to, the following:

**AXIS QUOTA SHARE FOLLOW FORM**
(AXIS QS 1008)

Attached to and forming part of Policy Number: EAF657478-23

A.      Insuring Agreement

Subject to the limitations, terms, and conditions contained in this policy or any endorsement attached hereto, the Company agrees to indemnify the Insured for direct physical loss or damage to covered property at covered locations, occurring during the Policy Period, and caused by covered perils, all as defined or described in the Lead Policy.

Except as regards the premium, the amount and participation AND EXCEPT AS OTHERWISE PROVIDED HEREIN, this policy is subject to the same limitations, rights, terms, and conditions contained in the Lead Policy.

The Company's share of the Lead Policy limits and sub-limits (including aggregate limits), if any, shall be restricted by the Company's participation on the program as described in the Participation section of this policy and any other applicable provision in this policy or any endorsement to this policy.

B.      Lead Policy:

Name of Insurer: Lexington Insurance Company
Policy Number: 062502712
Policy Term: 11/01/2023 - 11/01/2024 (At 12:01 A.M. Standard Time at the Insured Location.)

C.      Participation:

The Company shall not be liable for more than 25.0% being $1,250,000 pro rata part of the $5,000,000 excess of applicable deductible(s), subject to the following sub-limits which are part of and not in addition to this limit:

1. 25.0%, being $No Coverage part of $No Coverage any one occurrence and in the annual aggregate for all losses caused by or resulting from earthquake,
2. 25.0%, being $No Coverage part of $No Coverage any one occurrence and in the annual aggregate for all losses caused by or resulting from flood, except
3. 25.0%, being $No Coverage part of $No Coverage any one occurrence and in the annual aggregate Flood in all Zones beginning with the Letter A or V.

* * *

F.      Conditions of Coverage

1. By acceptance of this policy, the Insured agrees to pay the premium shown in the Common Policy Declarations and to comply with all the provisions of the policy.

2. If during the Policy Period the provisions of the Lead Policy are changed in any manner, as a condition precedent to coverage under this policy, the Insured shall give written notice to the Company of the full particulars of such change as soon as practicable but in no event later than thirty (30) days following the effective date of such change. No amendment to the Lead Policy during the Policy Period shall be effective in broadening or extending the coverage afforded by this policy or extending or increasing the limits of liability afforded by this policy unless the Company so agrees in writing. The Company may, in its sole discretion, condition its agreement to follow any changes to the Lead Policy on the Insured paying any additional premium required by the Company for such change.

3. This policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this policy. This policy can be changed only by endorsements issued by the Company and made a part of this policy.

15

4. Notice to any agent or knowledge possessed by any agent or by any other person other than the Company will not:

    a. create a waiver, or change any part of this policy; or

    b. prevent the Company from asserting any rights under the provisions of this policy.

\* \* \*

J.    Definitions

1. Company means the insurance company listed on the Common Policy Declarations.

2. Lead Policy means the specific policy identified as the "Lead Policy" under the paragraph B. of this policy.

3. Insured means the first Named Insured designated on the Common Policy Declarations.

4. Policy Period means the policy period designated on the Common Policy Declarations.

\* \* \*

**SCHEDULED LIMIT OF LIABILITY ENDORSEMENT**
ES 1380106

In the event of loss hereunder, liability of the Company shall be limited to the least of the following.

A.    The actual adjusted amount of loss, less applicable deductible(s) or self-insured retention(s).

B.    115% of the individually stated value for each scheduled item of property, time element, or other coverages shown on the latest **Application or Statement of Values on file with Company**, less applicable deductible(s) or self insured retention(s). If Actual Cash Value applies, then the maximum amount payable is 100%.

C.    The Limit of Liability, Amount of Insurance or sublimit is shown or endorsed onto the Policy. If a sublimit is shown on the policy, the lesser limit shall apply.

D.    The maximum amount payable under the Coinsurance Clause.

\* \* \*

100.    The AXIS Policy follows the same warranties, terms, and conditions as Policy No. 062502712 issued to Plaintiff by Lexington Insurance company for the policy period of November 1, 2023 to November 1, 2024 (the "**Lexington Policy**"), attached hereto as **Exhibit B**, except with regards to the premium, the amount and participation and except as otherwise provided in the AXIS Policy. As such, Plaintiff's claims against and recovery from Defendant, if any, are subject

to and limited by the terms, conditions, provisions, definitions, exclusions, and limitations contained in the Lexington Policy (to the extent not inconsistent with the provisions of the AXIS Policy) and Defendant, therefore, incorporates herein by reference the entirety of the Lexington Policy including, but not limited to, the following pertinent provisions which may serve to bar or limit Plaintiff's recovery, if any:

**COMMERCIAL PROPERTY POLICY DECLARATIONS**
PR8370 (09/22)

**Policy Number:**        062502712

* * *

Item 3.        **Policy Period:**
From: 11/01/2023                To: 11/01/2024
(At 12:01 A.M. Standard Time at the Insured Location.)

* * *

**A. Sublimits of Liability:**

The Sublimits of Liability stated in this **Policy** are part of, and not in addition to the **Policy Limit** and any Sublimits of Liability shown in Item **6.A.** below. The Sublimits of Liability are: (1) the maximum amount the Company will pay for all covered loss or damage arising out of the specific perils or coverages and/or (2) the maximum number of days for a specific coverage, regardless of the number of **Insured Locations**, coverages or **Covered Causes of Loss** under this **Policy**.

The Sublimits of Liability stated in this **Policy** are per **Occurrence** unless otherwise indicated. Regardless of the number of **Occurrences**, any Annual Aggregate in this Policy is the maximum amount payable for all covered loss or damage for the applicable coverage or **Covered Cause of Loss**.

*If the words, NOT COVERED are shown instead of a limit, Sublimit amount, or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or **Covered Cause of Loss**, then no coverage is provided for that coverage or **Covered Cause of Loss***.

* * *

3.  **Sublimits Applicable to Additional Coverages** – Each of these Sublimits is part of, and not in addition to the **Policy Limit**, and any Sublimits applicable to Specified Covered Causes of Loss shown in item **6.A.1.** above.

    b.  **Debris Removal:**                25.00% of covered direct physical loss or damage payable for all Insured Property, subject to a maximum Sublimit of $1,000,000

17

    c.  **Demolition And Increased
Cost of Construction:**

| | |
|---|---|
| **Demolition Coverage A:** | $INCLUDED |
| **Demolition Coverage B:** | $2,500,000 |
| **Demolition Coverage C:** | $2,500,000 |

\* \* \*

B.  **Maximum Amount Payable:**  In the event of covered loss or damage hereunder, the liability of the Company shall be limited to the least of the following:

1.  The actual adjusted amount of covered loss or damage, less applicable Deductible(s);

2.  As respects each **Insured Location**, 115.00% of the total combined stated values for all categories of Insured Property and Time Element coverages shown for that **Insured Location** on the latest Statement of Values or other documentation, on file with the Company prior to the time of the loss or damage; or

3.  The **Policy Limit** or applicable Sublimit(s) of Liability shown in Item **6.A.** or elsewhere in this **Policy**.

\* \* \*

*Item 8.*    **Deductibles:** The Deductibles shown below apply per Occurrence unless otherwise stated.

    A.  **Policy Deductible:** $ 25,000 applicable to all covered loss or damage unless otherwise stated below or in this **Policy**.

\* \* \*

    E.  **High Hazard Hail:**

        1.  3.00% of Total Insurable Values at the time of the loss at each **Insured Location** involved in the loss or damage, subject to a minimum of $25,000 any one **Occurrence** for all covered loss or damage arising out of **Hail** in **Hail Zone 1**.

\* \* \*

    G.  **Additional Deductible(s):**

        1.  All Other Windstorm or Hail: 3% of Total Insurable Values at the time of the loss at each Insured Location involved in the loss or damage, subject to a minimum of $25,000 anyone Occurrence for all covered loss or damage arising out of Windstorm or Hail.

In each case of loss or damage covered by this **Policy**, the Company shall not be liable unless the Insured sustains covered loss or damage in a single **Occurrence** greater than any applicable Deductible described in this **Policy** and then only for the amount in excess of such Deductible.

18

If an amount is not shown for any Deductible, then that Deductible shall not apply. Also, if an amount is not shown with respect to a part of a Deductible, then such part shall not apply, but the rest of the Deductible shall apply. When this **Policy** covers more than one **Insured Location**, the Deductible shall apply against the total loss or damage covered by this **Policy** in any one **Occurrence**, unless otherwise stated herein.

If two or more Deductible amounts provided in this **Policy** apply to a single **Occurrence**, the total to be deducted shall not exceed the largest applicable Deductible unless otherwise stated in this **Policy**. However, if a separate Property Damage Deductible and a separate Time Element Deductible apply to loss or damage in a single **Occurrence**, the Company shall apply both Deductibles. For any coverage for which there is a waiting period or a time period before coverage commences, such period shall apply in addition to any applicable Deductible(s) set forth in this **Policy**.

\* \* \*

**COMMERCIAL PROPERTY POLICY**
PR8371 (01/18)

\* \* \*

**SECTION I – COVERED CAUSES OF LOSS**

A.  **INSURING AGREEMENT**: Subject to all of the terms and conditions of this **Policy**, the Company insures against all risks of direct physical loss or damage to Insured Property from a **Covered Cause of Loss**.

B.  **PERILS EXCLUDED:**

1.  Except as otherwise provided under the Additional Coverages and Additional Time Element Coverages (and in such event, only to the extent provided therein), the Company does not insure for loss or damage caused directly or indirectly by any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

    \* \* \*

    n.  Loss or damage arising out of any **Covered Cause of Loss**, Additional Coverages or Additional Time Element Coverages for which the words NOT COVERED or for which a specified amount or number of days is not shown in the Policy Declarations.

2.  The Company does not insure for loss or damage caused by any of the following:

    \* \* \*

    b.  Indirect, remote or consequential loss or damage.

    \* \* \*

    e.  Faulty, workmanship, material, construction, installation or design from any cause. However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, the **Policy** will cover only such ensuing loss or damage.

\* \* \*

g. Deterioration; depletion; rust; corrosion; erosion; wet or dry rot; decay; evaporation; leakage; wear and tear; animal, insect or vermin damage; inherent vice or latent defect; shrinkage or change in color, flavor, texture or finish; damages from extremes or changes of temperature; damage from changes in relative humidity; all whether atmospheric or not.

However, if direct physical loss or damage not otherwise excluded by this Policy ensues, this Policy will cover only such ensuing loss or damage.

\* \* \*

h. Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors or ceilings. However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, this **Policy** will cover only such ensuing loss or damage.

\* \* \*

## SECTION II – INSURED PROPERTY

**A. INSURED PROPERTY**: Unless otherwise excluded, this Policy covers the following property while on the Insured Location and within 1,000 feet thereof:

1. Real property and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest. Such improvements and betterments shall be considered real property;

\* \* \*

## SECTION III – VALUATION

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraphs **B.** through **N.**, inclusive, below: Such property will be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, however the liability of the Company is limited to the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss, unless such requirement is waived by Company in writing, will be valued at actual cash value at the time and place of the loss.

\* \* \*

## SECTION V – ADDITIONAL COVERAGES

All Additional Coverages are subject to the terms and conditions of this **Policy**, including but not limited to, the Sublimits of Liability corresponding to each such Additional Coverage and any other applicable Sublimits or Deductibles shown

elsewhere in this **Policy**. The Sublimits corresponding to each such Additional Coverage are the maximum amount the Company will pay for all loss or damage arising out of such specified Additional Coverages. Such Sublimits are part of, and not in addition to the **Policy Limit** and the Specified Covered Causes of Loss Sublimits shown in Item **6.A**.**1**. of the Policy Declarations or elsewhere in this **Policy**.

\* \* \*

B.  DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense to remove debris consisting of Insured Property from the Insured Location(s) remaining as a result of direct physical loss or damage from a **Covered Cause of Loss** when the Insured gives written notice of such direct physical loss or damage to the Company within one hundred eighty (180) days after such loss or damage. The Company shall not be liable for any debris removal cost or expense associated with removing contaminated or polluted uninsured property, nor the **Pollutants** or **Contaminants** therein or thereon, whether or not such contamination results from a **Covered Cause of Loss**.

C.  DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage by a **Covered Cause of Loss** to a building at an **Insured Location** that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay up to the applicable Sublimits set forth in the Policy Declarations as follows:

1.  Demolition Coverage A: In accordance with the VALUATION Section of this **Policy**, the cost to replace the undamaged portion of the damaged building as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged portion of the same building;

2.  Demolition Coverage B: The cost to demolish and clear the site of the undamaged portion of the damaged building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged portion of the same building; and

3.  Demolition Coverage C: The increased cost of repair or replacement of the damaged building and undamaged portion of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, the Company shall not be liable for any such increased cost unless the damaged building is actually repaired or replaced.

The Company shall not be liable for any cost set forth above:

a.  Necessitated by the enforcement of any law or ordinance regulating any form of **Pollutants or Contaminants**; or

b.  Incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the time of the direct physical loss or damage.

\* \* \*

**SECTION VI – CONDITIONS**

21

* * *

B.  ADJUSTMENT OF LOSSES and FIRST NAMED INSURED: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgage holder.

If this **Policy** insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations and duties under this **Policy**. Payment of loss or return premium under this **Policy** to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

* * *

P.  PROTECTION AND PRESERVATION OF PROPERTY: In case of actual or imminent direct physical loss or damage by a **Covered Cause of Loss**, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property shall be included in the physical loss or damage amount otherwise recoverable under this **Policy**, if any, but shall be subject to the applicable Deductible, Sublimit of Liability and the **Policy Limit**.

* * *

R.  REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1.  Give prompt written notice of any loss or damage to the Company;
2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;
3.  Protect the property from further loss or damage;
4.  Separate the damaged and undamaged personal property;
5.  Maintain such property in the best possible order;
6.  Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;
7.  Furnish all other documents or insurance policies that the Company may reasonably require;
8.  Allow the Company to access and inspect any of the damaged or undamaged property;
9.  Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;
10.  Cooperate with the Company in all aspects of any claim and provide the Company with any additional information that it requires; and
11.  Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

    a.  The time and origin of the loss;
    b.  The interest of the Insured and of all others in the property;
    c.  The value of each item thereof determined in accordance with the valuation provisions of this **Policy** and the amount of loss thereto and all encumbrances thereon;
    d.  All other contracts of insurance, whether collectible or not, covering any of

said property; and

e.    Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

\* \* \*

## SECTION VIII – POLICY DEFINITIONS

\* \* \*

H.    **Covered Cause of Loss** means a peril or other type of loss, not otherwise excluded under this **Policy**.

\* \* \*

J.    **Defined Peril** means fire; lightning; explosion; **Windstorm or Hail**; **Smoke**; **Aircraft or Vehicle Impact**; **Riot, Strike or Civil Commotion**; **Vandalism and Malicious Mischief**; **Collapse** or **Leakage From Fire Protection Equipment**. **Defined Peril** also includes **Equipment Breakdown**, provided that **Equipment Breakdown** is covered under this **Policy**.

\* \* \*

T.    **Hail** means precipitation consisting of concentric layers of clear ice or compact snow.

U.    <u>High Hazard Hail Zones:</u> Designated High Hazard Hail Zones as reflected in this **Policy** shall be the following:

1.    **Hail Zone 1** means the following counties (unless otherwise stated) within the following states:

\* \* \*

<u>Texas:</u>        …Dallas….

\* \* \*

V.    **Insured Location(s)** means:

1.    The location(s) within the **Coverage Territory** described in the most recent Statement of Values on file with the Company, **Miscellaneous Unnamed Locations** and locations as covered by the ERRORS OR OMISSIONS and NEWLY ACQUIRED PROPERTIES Additional Coverages;

2.    Unless otherwise set forth in the Statement of Values, each such **Insured Location(s)** shall be comprised of any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

\* \* \*

BB.    **Occurrence** means any one accident, loss, disaster, casualty, incident or series of accidents, losses, disasters, casualties or incidents, including all resultant or concomitant insured losses, not otherwise excluded by this **Policy** and with

23

respect to:

1.  **Terrorism** (to the extent **Terrorism** is covered), arises out of the same or related purpose or cause; or

2.  Covered perils other than **Terrorism**, arises out of a single event or originating cause.

The **Occurrence** must occur during the Policy Period.

When the term applies to loss or losses from the perils of **Windstorm or Hail**; **Named Storm; Riot, Strike or Civil Commotion; Vandalism and Malicious Mischief; Earth Movement; Flood** or **Terrorism**, to the extent any such peril(s) are covered, all losses arising from such peril(s) occurring during a continuous period of seventy-two (72) hours shall be deemed to be a single **Occurrence**. The Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property, but no two such 72 hour periods shall overlap.

If the **Occurrence** commences during the Policy Period, then the Company shall treat the entire **Occurrence** as occurring during the Policy Period.

\* \* \*

EE.    **Policy** means the policy, the Policy Declarations and any extensions or endorsements hereto.

FF.    **Policy Limit** means the limit of liability shown in Item **6.** of the Policy Declarations.

\* \* \*

UU.    **Windstorm or Hail** means the direct action of wind or the direct action of **Hail**, whether accompanied by wind or not. However, **Windstorm or Hail** does not mean:

1.  Loss or damage caused by or resulting from frost or cold weather, ice (other than **Hail**), snow or sleet, whether driven by wind or not;

2.  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand, or dust, whether driven by wind or not, unless the building or structure first sustains wind or **Hail** damage to its roof or walls through which the rain, snow, sand or dust enters; or

3.  Loss or damage caused when the weight of snow, rainwater, ice or sleet is a contributing factor to the fall or **Collapse** of a building or structure or any part thereof, whether driven by wind or not.

\* \* \*

**HIGH HAZARD HAIL ZONES DEFINITION AMENDATORY ENDORSEMENT**
LX138089 (01/23)

This endorsement modifies insurance provided by the **Policy**:

The <u>High Hazard Hail Zones</u> Definition of the POLICY DEFINITIONS Section is deleted in its entirety and replaced with the following:

- <u>High Hazard Hail Zones</u>: Designated High Hazard Hail Zones as reflected in this **Policy** shall be the following:

1. **Hail Zone 1** means the following counties within the following states:

| State | Counties |
|---|---|
| * * * | |
| TEXAS | …DALLAS…. |

\* \* \*

101.     Plaintiff's claims and the damages it seeks are barred because Plaintiff has failed to comply with or satisfy conditions precedent, including but not limited to the following: (1) providing prompt notice of the loss or damage and a description of the property involved; (2) as soon as possible, give Defendant a description of how, when, and where the loss or damage occurred; (3) taking all reasonable steps to protect the Property from further damage; and (4) keeping a record of the expenses necessary to protect the Property for consideration in the settlement of the claim. All these failures on the part of Plaintiff are breaches of its duties under the Policy. These failures also prejudice Defendant's ability to investigate the claimed damage and evaluate the scope, timing, and cause of alleged damage.

102.     Plaintiff's claims and the damages sought are barred and/or limited to Actual Cash Value as of the time and place of loss because Plaintiff failed to repair or replace the damaged property within two years after the date of loss as required by the Policy.

103.     Plaintiff's claims and the damages sought for Increased Cost of Construction are barred and/or limited because Plaintiff failed to make the necessary repairs as required by the Policy and/or Plaintiff was legally obligated to comply prior to the alleged date of loss.

104.     Defendant asserts that there is no coverage under the Policy for elective betterments, upgrades, routine maintenance, or other costs that are unrelated to the repair of

physical damage caused solely by the alleged storm event.

105.   Defendant asserts offset/credit for all applicable deductibles, limits of insurance, and sub-limits of insurance in the Policy.

106.   In the event Plaintiff has any damages, which is expressly denied, Plaintiff has the burden of allocating between covered and uncovered damages.  Texas recognizes that the insured may only recover for damage caused by covered perils during the Policy period, and the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses. The burden of allocation is on the insured, even if the allocation is between covered perils and excluded perils.

107.   Under the doctrine of concurrent causation, Defendant does not owe coverage for damage caused by non-covered perils.  Texas recognizes the doctrine of concurrent causes, so that when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damages caused solely by the covered peril(s).  Because the insured may only recover for damage caused by covered perils during the Policy period, the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses.  The burden of allocation is on the insured, even if the allocation is between covered perils and excluded perils.

108.   Defendant pleads the doctrine of comparative good faith and fair dealing as an equitable factor in adjudging the relative positions of the parties in this case.

109.   Plaintiff's claims and the damages it seeks are barred because granting Plaintiff the relief it requests would result in unjust enrichment.

110.   The Policy and/or Texas law do not provide coverage for loss or damage that exceeds Plaintiff's financial interest and/or insurable interest in the Property.

26

111.    The existence of coverage for the underlying insurance claim is mandatory to establish the basis of Plaintiff's claims for alleged statutory violations. Plaintiff has failed to establish coverage under the Policy for the loss and amounts sought in this suit.

112.    Plaintiff's extra-contractual claims are barred, including, but not limited to, Plaintiff's "prompt payment" and "bad faith" claims, because a bona fide controversy existed and continues to exist concerning Plaintiff's entitlement, if any, to any insurance benefits from Defendant.  Defendant is permitted to value claims differently from insureds and others without facing extra-contractual liability.  Defendant's conduct was reasonable based upon the claim's investigation. Because a bona fide controversy existed and continues to exist regarding the valuation of Plaintiff's insurance claim, liability under the Policy has not been reasonably clear at any time, and any and all extra-contractual claims are barred.

113.    Plaintiff's extra-contractual claims are barred because Plaintiff's contract claim is barred.

114.    Plaintiff's extra-contractual claims are barred because Plaintiff has no injury other than its alleged loss of policy proceeds.

115.    Plaintiff's misrepresentation claims under the Texas Insurance Code are barred because Defendant made no misrepresentations and Plaintiff did not justifiably rely on any purported misrepresentation.

116.    Defendant invokes its rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and affirmatively pleads that Plaintiff's pleading for punitive damages or exemplary damages is violative of the Fourteenth Amendment.  Further, Defendant affirmatively pleads that the assessment and award of punitive damages is violative of the Eighth Amendment of the United States Constitution as it is applied to

27

the States through the Fourteenth Amendment of the United States Constitution, in that such awards potentially constitute an excessive fine imposed without the protections of fundamental due process. Accordingly, Defendant invokes its rights under the Eighth and Fourteenth Amendments and respectfully requests that this Court disallow any award of punitive damages in as much as an award in this case would be violative of Defendant's constitutional rights. Defendant further invokes its rights under the Fifth Amendment, as applied through the Fourteenth Amendment to the United States Constitution, wherein it reads in part, "No person shall be . . . deprived of . . . property without due process of law. . . ."

117.   Defendant specifically pleads that any award of punitive damages must be supported by clear and convincing evidence. Further, Defendant specifically pleads that if any exemplary damages are awarded, said damages are subject to the statutory limit set forth in the Texas Civil Practice and Remedies Code § 41.001, et. seq., other applicable statutory authority, and common law.

118.   Defendant asserts that it does not intend to waive any of its rights under the Policy or applicable law by not listing a particular Policy term, condition, definition, exclusion, limitation, or other provision, herein, and it specifically reserves the right to amend its answer under the applicable Rules of Civil Procedure and the laws of the State of Texas.

## **PRAYER**

Defendant prays Plaintiff take nothing by reason of this suit, that Defendant herein be released, discharged and found not liable to Plaintiff, that the parties go hence with their costs, without delay, and for such other and further relief, both general and special, at law and in equity, to which Defendant are justly entitled.

Respectfully submitted,

**SHACKELFORD, MCKINLEY & NORTON, LLP**

By: */s/ Bruce R. Wilkin*
**Bruce R. Wilkin**
Texas Bar No. 24053549
bwilkin@shackelford.law
**Gisela A. Aguilar**
Texas Bar No. 24132153
gaguilar@shackelford.law
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Phone: (832) 415-1801
Fax: (832) 565-9030

**Timothy E. Drake**
State Bar No. 00789789
tdrake@shackelford.law
9201 N. Central Expressway, Fourth Floor
Dallas, Texas 75231
Phone: (214) 780-1383
Fax: (214) 780-1401

**ATTORNEYS FOR DEFENDANT AXIS SURPLUS INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system on April 14, 2026.

*/s/ Bruce R. Wilkin*
Bruce R. Wilkin